## Case No. 2,288.

### CAHART et al. v. AUSTIN.

[2 Cliff. 528; 2 Fish. Pat. Cas. 543.][1]

Circuit Court, D. New Hampshire. May Term, 1865.

PATENTS—REED MUSICAL INSTRUMENTS — REISSUE —ENLARGING CLAIM—CONCLUSIVENESS OF COMMISSIONER'S DECISION—PURPOSE OF REISSUES.

1. The claims of an original patent on reed musical instruments were as follows: "Making an exhausting-bellows for reed instruments, consisting of two chambers combined with each other, and with the reeds placed above, so that the chamber next the sounding-board shall be enlarged by a weight on the first flap, substantially as herein described, and exhausted by the action of the second flap," &c. The patent was twice reissued, and the claims thereof were as follows. Of the first reissue, "the combination of the reeds with an exhaust chamber of variable capacity, and an air-pump whose action exhausts and rarifies the air therein,—the exhaust-chamber tending to expand with a force that will balance the rarefaction to be preserved in the chamber." Of the second reissue, "so connecting the board which contains the reed seats, or perforations for the reeds, with the exhausting bellows, that it shall form substantially a part of the stationary leaf or cover of the exhaust-chamber thereof, while the exhausting or pumping chamber is placed in immediate connection with the said exhaust-chamber, without the intervention of tubes, thus improving the tone of the reeds, and expediting their speaking, and giving a compact, light, and graceful form to the instrument," etc. This last reissue also claimed the reed cells in combination with the reed seats, the concentrating chamber in combination with the reed cells and reed seats; the last two combinations, however, only when used with a suction or exhaust bellows. *Held*, that when viewed in connection with the descriptive parts of the specification, the claims of the last reissue, although showing some connection with the original patent, were still too widely different from it, and based to such an extent upon interpolations in the description of the last reissue, that they must be construed as embracing more than was described, claimed, or indicated in the original, that they were not for the invention therein described, and were void.

[Cited in Union Paper-Collar Co. v. White, Case No. 14,396.]

2. Where the claims of a reissue contain new patentable matters not shown in the original patent, and the same are so interwoven with other elements specified in the original, that they cannot be separated, no action can be maintained upon the original elements of the claim so constructed, but the entire reissued claim must be taken together.

3. In an application for a reissue, the decision of the commissioner, even in the absence of fraud, is not conclusive upon the question whether the improvements set out in the reissue are a substantive part of the invention secured in the original.

4. Comments on Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 404.

5. The commissioner's decision is not conclusive as to his own jurisdiction. Neither has he any authority, pending an application for reissue, to hear testimony as to what the invention was, and allow the applicant to amend his claims and specification, so as to embrace whatever the proofs show he invented, although the reissue may thus show improvements neither described, suggested, nor indicated in the model, drawings, or specification of the original.

[Cited in Milligan & Higgins Glue Co. v. Upton, Case No. 9,607: Seymour v. Osborne, 11 Wall. (78 U. S.) 545.]

6. The reissue is granted in order to amend a defective original specification; but unless it is for the same invention, the commissioner has no authority to grant it.

7. If it appear on the face of the two patents, by comparison, that the reissue is for a different invention from the original, the reissue is void.

8. In a reissue the patentee may redescribe or claim not only what was well described or claimed in the original, but also what was defectively set out, suggested or indicated in the drawings or specifications which properly belonged to the invention.

9. The privilege of reissue was not given to make patents more elastic or expansive, and therefore more available for the suppression of other inventions of the same class.

Bill in equity. Suit was brought [by Jeremiah Cahart against Charles Austin] to recover damages for the alleged infringement of a patent for an improvement in reed musical instruments. The patent [No. 4,912] was twice reissued [Nos. 372 and 484] and was also extended. The original patent was entitled an improvement in bellows for musical instruments. It should be remarked that both reissues, in the descriptive portions thereof, contained statements upon the nature, characteristics, and object of the invention, which were enlarged and changed from those of the original. In the introductory portions of the opinion, the court characterized these changes as "extensive and radical." Cahart was the patentee, and the other complainants were assignees. The defences may be thus classified: That the last reissue was void, because it was for a different invention from that set forth in the original patent. That the patentee was not the original and first inventor of the improvement. That the claims of the patent were insufficient to cover any combination or invention, and that therefore the patent was void. That the improvements claimed in the last reissue were abandoned by the inventor [and are forfeited to public use].

C. M. Keller and Causten Browne, for complainants.

Edmund Burke and A. Fletcher, for respondents.

CLIFFORD, Circuit Justice. [Suit in this case was brought by the complainants to recover damages of the respondent, for the alleged infringement of certain letters patent. Invention, as described in the patent on which the suit is founded, which, in the second reissue, is for a new and useful improvement in reed musical instruments. Original patent, dated December 28, 1846, was for a new and useful improvement in bellows for musical instruments, and such

[1] [Reported by William Henry Clifford, Esq., and Samuel S. Fisher, Esq., and here compiled and reprinted by permission. Syllabus, statement, and portion of opinion not otherwise indicated from 2 Cliff. 528.]

was the description of the invention as contained in the specification. Patentee is the first-named complainant, and the record shows that he, on June 24, 1856, surrendered the patent, and the same was reissued to him on an amended specification. General description of the invention in the first reissue is the same as that in the original patent, but the statements of the specification as to the characteristics and objects of the invention are greatly changed. Reason for the surrender and reissue, as alleged in the bill of complaint, was that the original letters patent were inoperative, on account of a defective and insufficient description and specification, arising out of inadvertency and mistake. Second surrender was also made for the same reason; and on August 18, 1857, the patent was reissued to the patentee for a second time. Amendments made to this specification, as appears by the record, were extensive and radical. Term of the patent, as originally granted, was for fourteen years; but the last reissue was, on December 24, 1860, extended by the commissioner for the further term of seven years from and after the termination of the first term. Title of the complainants was derived from the patentee, and is not the subject of controversy in this suit.][2]

The first question presented involves the necessity of a careful examination of the specifications and claims of the several patents to which reference has been made. Specification annexed to the original patent describes the invention, not in the words employed in the patent itself, but as new and useful improvements in the bellows of that class of musical instruments called melodeons, seraphines, and aeolian attachments. Prior to the invention of the patentee, as he states, in all instruments in which reeds were vibrated by a current or currents of air, the bellows was so constructed as to blow or force the current against the reeds, instead of drawing the current, by an exhausting action of the bellows, as in his method. The defects of the old method are very clearly pointed out in the specification, and it is shown very satisfactorily that these defects produced irregular tones, and of course diminished the value of the instrument. Tones in such instruments are regulated by the force of the current by which they are produced; and the patentee states that the objects of his invention are to produce a constant current of regular force, except when it is required to be increased to produce the swell, and so to arrange the parts as to occupy less room than by the modes heretofore practised. Detailed statement is then given of the means the patentee employs to effect those objects. Referring to that statement, it will be seen that he makes the bellows with two exhausting chambers, constructed, arranged, and operated as therein circumstan-

[2] [From 2 Fish. Pat. Cas. 543.]

tially described. Inventor further states, that his invention also consists in making the valves of the flap, by means of a piece or pieces of thin leather or other like material drawn over a hole or series of holes, and that the leather so placed is prevented from flapping when stretched by use, by the means of a strip of india-rubber over the middle of the valve. Particular description is also given of the drawings; and then follows a very elaborate explanation of the invention, which need not be reproduced. The principal claim of the patent is, "making an exhausting-bellows for reed instruments consisting of two chambers combined with each other and with reeds placed above, so that the chamber next the sounding-board shall be enlarged by weight on the first flap and exhausted by the action of the second flap, substantially as described." Claim is also made in the patent for the method of making the valves by means of strips of leather or other material having like properties as described in the specification. Such was the description of the invention, as more fully set forth in the original specification; but new matters of very great importance are introduced into the amended specification of the second reissue, on which the suit is founded.

The patentee states, in the outset, that the object of his invention is to improve the tone of the reeds and to impart to them promptness and certainty in responding to the touch of the keys, and at the same time to give a compact and convenient and graceful form to the instrument. Radical change is also made in the description of the defects which existed in the instruments constructed prior to his invention. Some parts of the reeds, as the patentee now states, were uniformly found to be slow in speaking, and would often fail entirely, that is, they would either not speak at all or would give their tones out of tune. The sound of the reeds also was disagreeable and nasal, to such a degree, that the instruments could not be extensively introduced. The most radical change, however, is incorporated into the description of the construction and mode of operation of the instrument. The bellows, it is said, operates by exhaustion, and is constructed with two chambers, the one drawing the air from the other, the first having a tendency by weight or springs to expand with a force equal to about seven pounds to the square foot, and the other tending by similar means to close so as to expel the air within it. The upper leaf of the exhaust-chamber is firmly attached to the frame of the instrument, a little below the key-frame. Openings for the reeds are made through that board, and directly over each reed seat is a cap closely fitting upon the reed-board, forming a cell over the reed and reed openings, about the length of the reed. And the statement is, that this case is open at one end of the reed, and is closed at the other, and is in width and in depth about three eighths of

an inch, but should be slightly increased for the large reeds and diminished for the small ones. Continuing the description, the patentee states that about three inches from the mouth of the reed cells and on the same leaf of the exhaust-chamber, he places a board in a vertical position, which he calls the concentrating-board, and as described, it extends to the ends and top of the instrument, thus forming a narrow chamber, open substantially at the top, but extending the whole length of the reed-board. The emphatic statement of the patentee is, that by the use of these cells on his bellows, the tone of the reeds is greatly improved and their speaking greatly accelerated, and that the concentrating chamber also much increases its richness. Whether new or old, it cannot be doubted that the improvements described may have a tendency to improve the tone and increase its richness; but the difficulty in the case is, that neither of them were described, suggested, or indicated in the specifications or drawings of the original patent. They are not amendments, but interpolations of the baldest and most unmistakable character, unsupported by anything to be found in the original patent, or even in the first reissue, as will more fully appear by attention to the claim of that patent. Undoubtedly the patentee made some advance in the work of expansion when he framed that specification, but the claim of the patent is altogether too narrow to support his present pretensions. As there stated, the claim is the combination of the reeds with an exhaust-chamber of variable capacity, and an air-pump whose action exhausts and rarefies the air therein, the exhaust-chamber tending to expand with a force that will balance the rarefaction to be preserved in the chamber for the purposes herein set forth. Reference is made to that claim merely to show the process of expansion, and the steps by which it was accomplished. Widely as that claim differs from the claims in the original patent, still the difference is very much less than between the claim of the original patent and those contained in the last reissue, on which the suit is founded.

The last reissued patent has three claims, as follows: First claim is, so connecting the board which contains the reed seats or perforation for the reeds with the exhausting-bellows, that it shall form substantially a part of the stationary leaf or cover of the exhaust-chamber thereof, while the exhausting or pumping chamber is placed in immediate connection with the exhaust-chamber, without the intervention of tubes, thus improving the tone of the reeds and expediting their speaking, and giving a compact, light, and graceful form to the instrument, substantially as described; secondly, the patentee claims the reed cells, in combination with the reed seats, or openings, substantially as described; thirdly, he claims the concentrating chamber in combination with the reed cells and reed seats, substantially as described, but he claims the last two combinations, only when they are to be used with suction or exhaust-bellows, capable of producing a continuous current of air through the reed openings. Doubtless there is some trace of the invention, as described in the original patent, to be seen in the first claim, and yet it is obviously founded chiefly upon the interpolations contained in the specifications of the last reissue; and the descriptive part is so mixed up with those new matters, that it is impossible to separate the one from the other, and consequently the whole must stand or fall together. The better opinion is, that where a patent contains several claims, and the invention covered by one of them is not new or is absolutely void, the patentee may maintain an action for the infringement of the patent so far as it regards the valid claims, although he did not make or record a disclaimer of the invalid or void claim before the commencement of the action. Hall v. Wiles [Case No. 5,-954]; Vance v. Campbell, 1 Black. [66 U. S.] 429. But the principle cannot be applied to this case, if it be true, that a patentee cannot embrace in his reissued patent any patentable improvements not described, suggested, or indicated in the specification or drawings of his original patent, because it is evident that even the first claim is mainly founded upon such new matters. and that those new matters are so interwoven with the descriptive portion of the claim that they cannot be separated from the other matters therein described, which correspond more nearly with the elements specified in the original patent. Complainants admit that the second and third claims are founded entirely upon these interpolations, and the admission is a very proper one, as the fact is so, beyond all controversy. Admission in the brief of the complainants is, that "neither in the specifications, drawing, or model filed and remaining in the patent office, as part of the original application, do the devices covered by" those claims appear. Their position, however, is, that his invention as originally made did, as matter of fact, embrace those devices; and they insist that the commissioner of patents, pending an application for a reissue, may hear parol proofs as to what the invention was, and may allow the applicant so to amend his specification and the claims of his patent as to embrace everything which the proofs show that he actually invented, notwithstanding the reissue may include improvements neither described, suggested, nor indicated in the original model, application, specification, or drawings. The theory of the complainants in fact is, that the decision of the commissioner, except in cases of actual fraud, is conclusive that the new improvements described in the amended specification and included in the claims of the reissued patent were a substantive part of the invention secured in the original pat-

ent. Whenever the patent shall be inoperative or invalid by reason of a defective or insufficient description or specification, if the error has arisen by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, and the payment to him of a certain duty, to cause a new patent to be issued to him for the same invention, for the residue of the period then unexpired, for which the original patent was granted. 5 Stat. § 13, p. 122.

The proposition maintained by the complainants is, that the applicant for a reissue may offer parol proofs to show what his invention was, and that the decision of the commissioner, whatever it may be, is conclusive, except in cases of fraud. Support to that proposition is chiefly drawn from the case of Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 404; and it must be admitted that there are some remarks in the opinion of the court which give some countenance to that view of the law. Those remarks, however, were not necessary to the decision of the cause, and they must be received with some qualification, as the express requirement of the act of congress is, that the reissue must be for the same invention. Unless the reissue is for the same invention, the commissioner has no power to grant it; and it cannot be maintained for a moment that the decision of the commissioner is conclusive as to his own jurisdiction. The patent in that case was for an invention or improvement in the application of the flanches of the wheels on one side of railroad carriages, and of the treads of the wheels on the other side, to turn short curves upon railroads. Specifications of the patent being defective, it was surrendered, and reissued in order, as proved, to limit it and confine it to the turning of short curves in streets. Original patent was burnt with the patent office, and no part of the specifications was preserved, except what was published in a certain journal. Principal defect in the original patent was in regard to the grooves, and the witness called to prove the contents of the original patent testified that he thought that the grooves were alluded to in the original specification. Instructions of the court to the jury were, that the use of the grooves, which were described as a part of the invention in the reissued patent, was no part of the thing originally patented. Remarking upon that part of the charge the court say: Whether the new patent was substantially for a different invention from the first one, was a question for the jury, on the evidence, and there can be no doubt that the rule as stated was correct, as applied to that case. Error of the judge at that trial was, in ruling as law what, under the circumstances of the case, belonged to the jury. But the rule is otherwise if it appears on the face of the two patents by comparison that the reissue is for a different invention from that secured in the original patent. Such were the rulings of this court in the case of Sickles v. Evans [Case No. 12,839]; and in the case of Goodyear v. Providence Rubber Co. [Id. 5,583]; and I must adhere to that opinion until the question is otherwise settled by the supreme court. The commissioner in the case of the burnt patent had something to amend by if the witness was to be believed, and surely it was the duty of the court under those circumstances to submit the question to the jury, whether the original patent was or was not for the same invention. Neither the court nor bar pretended in that case that the decision of the commissioner was conclusive, but the question was, whether the decision belonged to the court or jury. Opinion of the court was delivered by the same judge in the case of Battin v. Taggert, 17 How. [58 U. S.] 83, which was decided eight years later. The supreme court say, in that case, that the reissued patent must be for the same invention substantially, though it be described in terms more precise than in the first patent. Under such circumstances a new and different invention cannot be claimed. But when the specification or claim is made so vaguely as to be inoperative and invalid, yet an amendment may give to it validity, and protect the rights of the patentee against subsequent infringement. Patents, say the court, in the case of Burr v. Duryee, 1 Wall. [68 U. S.] 575, had frequently been adjudged invalid prior to the patent act of 1836 [5 Stat. 117], from the insufficiency of the specification. The thirteenth section of that act was intended to remedy that evil, by permitting the patentee to surrender his defective patent, and have it renewed in proper form, "whenever it shall be inoperative or invalid by reason of a defective or insufficient description or specification;" but this privilege was not given to the patentee or his assignee in order that the patent may be rendered more elastic or expansive, and therefore more available for the suppression of all other inventions. Power is undoubtedly conferred upon the commissioner to allow the specification to be amended, if the patent is inoperative or invalid for the reason stated in the provision, and to reissue the patent in proper form. Pursuant to that authority he may doubtless allow the patentee to redescribe his invention, and to include in the description and claims of the patent, not only what was well described before, but whatever was suggested or indicated in the specification or drawings which properly belongs to the invention. Whether he can be permitted to go further, and resort to the original application and the model filed in the patent office, it is not now necessary to decide, as it is conceded that the improvements in question were neither suggested nor indicated in the application or model, nor in the specification or drawings. The additions made to the specifica-

tion were interpolations, and not amendments, and consequently the commissioner had no authority to allow them to be made. Comparing the patents, it is clear on the face of the instruments, that the reissued patent is not for the same invention as that secured by the original patent, and therefore it is void. Having come to this conclusion, it is unnecessary to decide the other questions presented for decision.

Complainants are not entitled to relief. Bill of complaint dismissed with costs.